## McGlade's Appeal.

1. A fully executed and completed gift of personalty made within a month of the donor's death is valid and effectual, and is not within the prohibition of the Act of April 26th 1855, § 11.

2. A., having made a will whereby she bequeathed legacies to charities and the residue of her estate to B. for charitable purposes, finding that her death was imminent, executed a letter of attorney to transfer loan, and handed the same, together with the certificates of loan, to C., with instructions to sell said loan, to pay the amount of her charitable legacies from the proceeds, and to hand the balance of said proceeds to B. to use as he saw fit.   C. sold the loan, receiving in payment therefor a check drawn to B.'s order, which he retained.   A. died within a calendar month of the date of her will.   Subsequently, her executor filing his account, the Orphans' Court held that the intended disposition of the proceeds of the loan by A. was in contravention of the provisions of the Act of April 26th 1855, § 11, and accordingly surcharged said executor with the amount of said proceeds.   *Held*, that A. had made a fully executed and completed gift of said loan or the proceeds thereof in her lifetime, which was not in contravention of said Act, and that therefore the above decree was erroneous.

January 11th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of July Term 1881, No. 104.

Appeal of Frederick McGlade, executor of the will of Mary B. Daly, deceased, and of Rev. James E. Mulholland, from decree of said court, in the matter of the account of said Mc-Glade, as executor, surcharging him with the proceeds of certain securities sold during the testatrix's last illness by her direction ; and refusing to award payment to Rev. James E. Mulholland of the sum of $100, bequeathed to him by said testatrix " for masses."

The facts were as follows :—On Saturday, November 29th 1879, Mary B. Daly, being then ill, sent for her friend Frederick McGlade, and gave him instructions for her will, which he drew accordingly, and which she signed the same day, and delivered to Rev. James E. Mulholland, for safe keeping.   By this will she bequeathed (1) sundry legacies to individual relatives and friends; (2) certain bequests to charities and religious persons, including a bequest " to Rev. James E. Mulholland, of St. Patrick's church, for masses, $100 ;" .(3) all the residue of her estate to Archbishop James F. Wood, to be by him, at his discretion, used for charitable purposes.   She appointed Frederick McGlade her executor.

On the following Monday McGlade again called to see Mrs. Daly, and, finding her very ill, he said to her that if she should

die within thirty days from the date of her will, the bequests to charities would fail. This information caused her anxiety, and she asked what she should do. He replied, that the only way was to give the money away herself before she died. This suggestion met her approval, and, by her direction, McGlade brought a magistrate, before whom Mrs. Daly executed, under seal, a power of attorney in blank, authorizing the sale and transfer of $2,400 of Philadelphia City Loan owned by her, and standing in her name. She then sent the certificates of said loan, with the power of attorney, to the Rev. Mr. Mulholland, and requested him to sell the same, and hand over the proceeds to Archbishop Wood, to be by him distributed among the several charities in the amounts of the bequests to them contained in her will, and to do with the balance as he deemed proper. Rev. Mr. Mulholland accordingly sold the loan through Messrs. Drexel & Co., brokers, who, at his request, gave him their check to the order of Archbishop Wood, for the proceeds, $2,718, dated December 9th 1879. Archbishop Wood did not, however, receive or indorse the check, which remained in the hands of Rev. Mr. Mulholland, and the money remained in the hands of Messrs. Drexel & Co.

Mrs. Daly died December 20th 1879, less than one month after the date of her will.

Upon the filing of the executor's account, it appeared that the testatrix's estate was insufficient to pay all the legacies in full. Counsel for certain legatees (other than charities) claimed that the testatrix having died within one month of the date of her will, the bequests to the charities were void, and that the attempted gift to them by the testatrix in her lifetime was also void; whereby it became the duty of the executor to claim and collect the proceeds of said city loan sold by direction of testatrix, and apply the same to the payment in full of said legacies to private beneficiaries, and any balance that might remain to the next of kin. He therefore asked that the executor be surcharged, for the purpose of distribution, with the amount of the proceeds of said city loan, $2,718.

The auditing judge (HANNA, P. J.) sustained the claim, and, in his adjudication, held as follows:—"There can be no doubt as to the invalidity of the bequests to 'religious or charitable uses,' contained in the will of testatrix, she having died within one calendar month after its execution: Act of April 26th 1855. But the question now presented is, whether a disposition by way of gift, with intent to evade the statute, made within thirty days prior to the death of the testatrix, is contemplated by the Act of Assembly, and also void.

"The Act provides that 'no estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body po-

litic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible and at the time disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property, contrary hereto, shall be void and go to the residuary legatee or devisee, next of kin, or heir according to law; Provided, That any disposition of property within said period, bona fide, made for a fair valuable consideration, shall not be hereby avoided.'

" Under the evidence it cannot be denied that testatrix, by the delivery of the certificate of city loan to the Rev. James E. Mulholland, with instructions to sell the same, to the end that the proceeds should be, by him or Archbishop Wood, distributed and paid to the religious and charitable purposes contemplated and mentioned in her will, intended, if possible, to prevent the loss to these charities and religious institutions, which she well knew would ensue in the event of her death within thirty days after the execution of her will. But, however laudable the motive, her benevolent wishes and intentions cannot be carried out, and express provisions of the law disobeyed. As was said by Lewis, C. J., in Price *v.* Maxwell, 4 Casey 34, 'There may be some difference of opinion on the question of policy involved in its enactment, but there can be no doubt that it is our duty to carry out its provisions in good faith.' Here there was not only a gift of personal property, but upon the express trust that it was to be sold and the moneys realized, paid and distributed as gifts or donations for 'religious or charitable uses.'

It was not, as in the case of Shultz's Appeal, 2 W. N. C. 309, where there was an absolute bequest to a legatee, with the design by testator that it should be devoted to charities, and although the testator died within the thirty days, yet, as the legatee had no knowledge of the wishes and intentions of testator until after his death, the bequest was held good, and not avoided by the statute. In this case, the Rev. Mr. Mulholland, himself a legatee, accepted the trust imposed by testatrix, and with full knowledge of the purpose of testatrix in delivering to him the certificate of city loan. The Act of 1855 is clear and explicit. It applies to real and personal estate, and prohibits a bequest, devise, or conveyance of either to a corporation or any person in trust for religious or charitable uses, except the same be done by deed or will, at least one month before the death of the testator or alienor. That in this manner only, can such a bequest or conveyance be made, is evidenced further by the fact that 'all disposition of property contrary hereto shall be void.' This, of course, means any disposition other than by deed or will executed as the law prescribes.

[McGlade's Appeal.]

" In view of the facts presented by the testimony, the auditing judge is of the opinion that the attempted gift by the testatrix was contrary to the provisions of the Act of 1855, and therefore invalid. Both the Rev. Mr. Mulholland, and the Archbishop have acted with wise discretion in declining to receive and disburse the amount realized by the sale of the city loan.

" The amount in the custody of the bankers being therefore assets of decedent's estate, the accountants should at once collect the same, and, for the purpose of distribution according to law, be surcharged therewith as hereafter appears. Under the Act of 1855 the void legacies would go to the residuary legatee. But as the bequest of the residue of the estate, being for charitable purposes is also invalid, the entire residue of the estate must go to the next of kin or heirs of the testatrix, according to the intestate law. And the above balance is accordingly so awarded, and directed to be paid by the executor."

To this finding of the auditing judge exceptions were filed by the executor, and on behalf of the charities who were beneficiaries, which exceptions the court, after argument, dismissed, Penrose, J., filing the following opinion :—

" If the gift here had been of money or other property passing by mere delivery, there would be room to argue that it did not fall within the terms of the Act of 1855. But it was not; what was given was a certificate of city loan, which could not be transferred except by writing, and a power of attorney was sealed and delivered by the donor to accomplish this purpose. It was given to the spiritual adviser of the decedent in trust for certain religious or charitable uses, with the avowed purpose of preventing a failure of the gift in the event of her death within thirty days.

" This may, with entire propriety of language, be called a conveyance, and the case is as clearly within the letter as it is within the spirit and reason of the statute.

" Bearing in mind the mischief designed to be remedied, our astuteness should not be exercised in finding means by which to defeat the operation of the Act; on the contrary, we should follow the course so highly commended by Lord Coke in his comparison of ancient and modern readings, and strive to ' suppress subtile intentions to creep out of the statute.'

" Exceptions dismissed, and adjudication confirmed."

Frederick McGlade, executor, and Rev. James E. Mulholland thereupon took this appeal, assigning for error, inter alia, the dismissing of their exceptions, and the decree of the court.

*B. F. Fisher*, for the appellants.—The disposal of the city

loan by Mrs. Daly, was an executed gift inter vivos. The certificates were actually sold, and the money received. The check for the proceeds was equivalent to the money. The title passed; the donor could not have recovered back the gift, nor can her executor after her death. The Act of 1855 does not, by its terms, and was not intended to, apply to the disposal of personal property during life. The act prohibits only bequests of personalty, and devises or conveyances of realty to charitable uses, unless the same be "by deed or will, . . . at least one calendar month before the decease of testator or alienor." Under the construction adopted by the court below, all gifts to charities unaccompanied by a deed attested by two credible and disinterested witnesses, would be void, and executors would be chargeable therewith.

The statute does not contemplate interfering with the rights of ownership in personal property which passes by delivery. The fact that Mrs. Daly became her own almoner with intent to evade the statute cannot defeat her executed gift, which had no taint of illegality about it.

The gift to the appellant, Mulholland, was a personal one, and not for a charitable or religious use. It was in compensation for his outward services in saying masses,—not for the masses as such—just as a fee is paid to a clergyman for his service in performing a marriage ceremony. The case is distinguishable from Rhymer's Appeal, 8 W. N. C. 266, where the money was given to a *church* "to be expended in masses," and not to a legatee for services performed by him. The executor should not, therefore, have been surcharged with that gift.

*E. R. Worrell*, for the appellees, relied on the opinions of the court below, and contended that the act of the testatrix was a legal fraud upon the statute, she attempting deliberately to accomplish by indirection that which the statute directly prohibited.

Mr. Justice GORDON delivered the opinion of the court, January 23d 1882.

Had Mary B. Daly, the decedent, within one month, or, for that matter, within one day, before her death, handed over to the representative of any one or more of the charities mentioned in her will, any sum of money or piece of personal property, intending to pass it to it or them as an immediate gift, I suppose it would not be contended that such gift would come within the prohibition of the eleventh section of the Act of April 26th 1855. Such present donation, thus fully executed and completed during the life of the donor, cannot fairly be called either a bequest, devise or conveyance, within the meaning of the statute.

[McGlade's Appeal.]

Following out, then, this thought, as the one upon which the case turns, our inquiry is naturally directed to the intention of this donor, and to that which she actually did. But to this inquiry the answer is straightforward and clear; about it there is neither obscurity nor ambiguity. She intended to make an immediate donation of a certain amount of money to the charities which she had already indicated. There was to be no intervening trust about it, excepting only so far as she must of necessity, in consequence of her sickness, have an intervening hand to pay it over. That she had to execute a power of attorney on her city bond, in order to raise the money, is of no kind of consequence. Had she, when in sound health, sold this bond, or for that matter, her real estate, if any she had, and of the money so raised made her intended donations, will any one pretend to say that, had she died within thirty days after the execution of such donations her beneficiaries would have had to repay the moneys thus given to them? Yet this is substantially what we have in the case as now presented to us. The testatrix, being unable to attend to her own business, ordered her city bond to be handed to the Rev. Mr. Mulholland, to be by him sold, at the same time directing the proceeds to be passed to Archbishop Wood for distribution, before her death, among the charities indicated. Accordingly, Mr. Mulholland did effect a sale of the bond, through Drexel & Co., and passed the proceeds to the Archbishop in the shape of Drexel & Co.'s check, to his, the Archbishop's, order. All this was done under the direction of the donor and in her lifetime. The check was dated December 9th 1879, and she died on the 20th of the same month.

Now then, the question is, how do these donees take?—By what title do they hold the moneys intended for their use?— Under a bequest, devise or conveyance?—No, under neither; but by virtue of a gift fully executed in the donor's lifetime.

Such then being the conclusion to which the facts of the case bring us, if nevertheless, the case is within our Act of 1855, as the court below seemed to think, the result is just this, there is a period of one calendar month in every person's life, in which, by no possibility, can such person make a present, executed gift of any part of his or her money, or other personal assets, to a religious use or other charity. To a doctrine such as this we cannot assent. Were we in doubt as to the intent of the statute we would, nevertheless, incline to that construction of it which would impinge the least on the right of persons so to dispose of their own property as to them may seem proper. We are not among those persons who regard this act as of doubtful utility; on the other hand we esteem it of great public value, and are, therefore, the less disposed so to construe it as to make it the object of public odium.

The decree of the court below, as to the surcharge of $2718, proceeds of sale of city loan, is now reversed and set aside, and as to the balance of the account a redistribution is ordered.   The costs of this appeal to be paid by the appellees.